# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

Q.I. PRESS CONTROLS, B.V.,
*Appellant,*

v.

MICHELLE K. LEE, Deputy Director, United States Patent and Trademark Office,
*Appellee,*

AND

QUAD/TECH, INC.,
*Cross-Appellant.*

_____

2012-1630, -1631

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Reexamination No. 95/000,526.

_____

## APPELLEE DIRECTOR OF THE
## UNITED STATES PATENT AND TRADEMARK OFFICE
## PETITION FOR PANEL REHEARING

NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

SYDNEY O. JOHNSON, JR.
JOSEPH G. PICCOLO
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035
Attorneys for the Director of the
U.S. Patent and Trademark Office

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    POINTS OF LAW OVERLOOKED OR MISAPPREHENDED..............2

III.   BACKGROUND ........................................................................2

IV.    ARGUMENT............................................................................4

    A.    The Panel Was Required To Confine Its Review To The
        Record on Appeal ...........................................................5

    B.    The APA Bars The Panel From Reviewing Whether The
        Board Should Have Considered A New Ground Of Rejection ..........7

    C.    The Panel Did Not Have The Authority To Order The Board
        To Consider The Combination Of Sainio And Ross As A
        New Ground Of Rejection Of Claims 1-60 .......................................9

V.     CONCLUSION ......................................................................13

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)................................................................................7

*Baxter, In re*,
    678 F.3d 1357 (Fed. Cir. 2012) ......................................................6

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
    419 U.S. 281 (1974)..............................................................................12

*Ellison v. Connor*,
    153 F.3d 247 (5th Cir. 1998) ..........................................................7

*Gartside, In re*,
    203 F.3d 1305 (Fed. Cir. 2000) .....................................................5

*Heckler v. Chaney*,
    470 U.S. 821 (1985).....................................................................7, 9, 12

*INS v. Ventura*,
    537 U.S. 12 (2002)..............................................................................10

*Kendkler v. Wirtz*,
    388 F.2d 381 (3rd Cir. 1968) .........................................................7

*Leithem, In re*,
    661 F.3d 1316 (Fed. Cir. 2011) ........................................1, 2, 8, 11

*Loehr, In re*,
    500 F.2d 1390 (C.C.P.A. 1974)................................................1, 11

*Norton v. So. Utah Wilderness Alliance*,
    542 U.S. 55 (2004)........................................................................10, 12

*NSK Corp. v. U.S. Intern. Trade Comm'n*,
    542 Fed.Appx. 950 (Fed. Cir. 2013) .............................................8

*Pension Benefit Guar. Corp. v. LTV Corp.*,
   496 U.S. 633 (1990)......................................................................................12

*Rambus v. Rea*,
   731 F.3d 1248 (Fed. Cir. 2013) ...........................................................5, 9, 11

*Randall Mfg. v. Rea*,
   733 F.3d 1355 (Fed. Cir. 2013) ......................................................................6

*Tamenut v. Mukasey*,
   521 F.3d 1000 (8th Cir. 2008) ........................................................................7

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
   435 U.S. 519 (1978).......................................................................................12

*Watts, In re*,
   354 F.3d 1362 (Fed. Cir. 2004) ......................................................................6

## Statutes

5 U.S.C. § 701(a) .....................................................................................2, 7, 9

5 U.S.C. § 706...........................................................................................2, 9, 10

35 U.S.C. § 103...............................................................................................2, 3

35 U.S.C. § 144..................................................................................................5

## Regulations

37 C.F.R. § 41.37(c)(iv) ....................................................................................5

37 C.F.R.  § 41.50(b) .......................................................................................10

37 C.F.R. § 41.77(b) ..................................................................................*passim*

## Other Authorities

MPEP § 1213.02. ..............................................................................................11

# I.    INTRODUCTION

The USPTO's regulations provide that if the Board has "knowledge of any grounds not raised in the appeal for rejecting any pending claim, it <u>may</u> include in its opinion a statement to that effect with its reasons for so holding."  37 C.F.R. § 41.77(b) (emphasis added).  Given the permissive language in the regulation, it is not surprising that both this Court, and its predecessor, have acknowledged that the Board has discretion to issue new grounds of rejection.  *See, e.g.*, *In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011); *In re Loehr*, 500 F.2d 1390, 1393 (C.C.P.A. 1974).

The panel's precedential holding that the Board erred when it failed to exercise its discretion to consider a new ground of rejection (Op. at 19) is at odds with the discretionary nature of § 41.77(b), as well as the Board's role as an appellate tribunal.  The decision could be used to argue that the Board is required to look for possible rejections that were not made on the record, and to include them if present.  The decision could also enable third party requesters to limit the rejections they propose to the examiner, and then argue that the Board erred by failing to consider new grounds of rejection they chose not to propose—as happened here.  The decision may also impede this Court's ability to effectively focus on reviewing decisions that were actually made as opposed to those that could have been made.  Accordingly, rehearing is necessary not only to avoid these

1

unintended consequences of the panel's precedential decision, but also to restore

the proper discretionary standard for new grounds of rejection, and thereby remain

consistent with *Leithem*.

## II.    POINTS OF LAW OVERLOOKED OR MISAPPREHENDED

The panel overlooked or misapprehended key points of law in its decision.

The panel failed to confine its decision to the record on appeal.  Instead, it looked

at an issue outside the record—whether claim 1 would have been obvious based on

the combination of Sainio and Ross—to justify Q. I. Press' (QIPC's) argument that

claim 1 is not valid.  Additionally, review of the Board's failure to issue a new

ground of rejection is barred under 5 U.S.C. § 701(a)(2) because 37 C.F.R. §

41.77(b) expressly commits new grounds of rejection to the Board's discretion, and

review is not authorized under 5 U.S.C. § 706 because this Court is precluded from

compelling the Board to exercise its discretion in a manner favored by the Court.

## III.    BACKGROUND

Quad/Tech owns U.S. Patent 6,867,423 (the '423 patent), which relates to a

visual inspection system for a printing press.  In one embodiment, the '423 patent

discloses using a sensor surrounded by LEDs to look for defects in paper as it

passes through various locations in the printing press.

In the *inter partes* reexamination that gave rise to the current appeal, QIPC

proposed rejecting original claims 1-12 under 35 U.S.C. § 103 as obvious over

2

Helmrich, Rambaldi and Ross, A228, and the Examiner adopted QIPC's proposed rejections, A345. Quad/Tech then amended several of the rejected claims and added new claims 13–72. Quad/Tech submitted an Information Disclosure Statement that included Maruyama. In response to the amendment, QIPC proposed rejecting claim 61 under 35 U.S.C. § 103 as obvious over Sainio and Ross. A465-66. QIPC did not support any additional rejections of claims 1-12, Once again, the Examiner adopted QIPC's proposed rejections. A605-10.

The Examiner issued an Action Closing Prosecution rejecting all 72 claims. In particular, claim 1 (which was representative of claims 2-60) was rejected as obvious over Maruyama and Ross, and claim 61 (which was representative of claims 62-72) was rejected as obvious over Sainio and Ross. The Examiner maintained the rejections of claims 1 and 61 in her Right of Appeal Notice (RAN). At no point before the RAN was issued did QIPC propose to the Examiner a rejection of claim 1 based on the combination of Sainio and Ross.

In its appeal to the Board, QIPC merely presented arguments in defense of the Examiner's rejection of claims 1 and 61. Nowhere did QIPC allege that the Examiner should have rejected claim 1 based on Sainio and Ross. It did not even suggest that the Board consider the patentability of claim 1 in view of those references. The Board reversed the rejection of claim 1, and affirmed the rejection of claim 61.

3

QIPC appealed the Board's decision reversing the rejection of claim 1. In its appeal brief to this Court, for the first time, QIPC suggested that claim 1 might be obvious over the combination of Sainio and Ross.

On appeal, in a precedential opinion, this Court vacated the Board's rejection of claims 1-60. The panel held that "the Board erred by not considering the combination of Sainio and Ross as a new ground for rejection of claims 1-60." Op. at 19.

## IV.   ARGUMENT

Although 37 CF.R. § 41.77(b) expressly states that the Board "may" issue a new ground of rejection if it knows of a ground of rejection not raised in the appeal, the panel determined that the Board "must" designate a new ground of rejection in those circumstances, and ordered the Board to consider a new ground of rejection based on the combination of Sainio and Ross. The panel's decision was wrong for three independent reasons. First, the panel went outside the record in addressing the new ground issue. Second, the panel was barred from addressing the new ground issue because new grounds are specifically committed to the Board's discretion. Finally, even if the panel was not barred from reaching the new ground issue, the Court lacked authority to compel the Board to consider a new ground of rejection.

4

## A. The Panel Was Required To Confine Its Review To The Record On Appeal

The Patent Act expressly provides that this Court "shall review the <u>decision</u> from which an appeal is taken <u>on the record</u>" before the USPTO.  35 U.S.C. § 144 (emphasis added).  In appeals from the Board, the record contains the "arguments and evidence presented by the parties," and this Court's review of the Board's decision is limited to "the four corners of that record."  *In re Gartside*, 203 F.3d 1305, 1314 (Fed. Cir. 2000); *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004) (stating that "our review of the Board's decision is confined to the 'four corners' of that record").

Since the record dictates the parameters of the review, this Court has emphasized that it "cannot" look to new arguments "to find justification for the Board's decision."  *Gartside*, 203 F.3d at 1314 ("We cannot look elsewhere to find justification for the Board's decision."); *Rambus v. Rea*, 731 F.3d 1248, 1256 (Fed. Cir. 2013) ("we will not affirm a Board rejection . . . which essentially provides a new motivation to combine the references").  The corollary of that principle must also be true: this Court cannot look to new arguments to find justification for an appellant's position.  That corollary is embodied in the Board's own rules, which make it clear that arguments not made to the Board are waived.  *See* 37 C.F.R. § 41.37(c)(iv) (any arguments or authorities not included in the appeal brief will be refused consideration by the Board for purposes of the present appeal); *see also In*

5

*re Baxter*, 678 F.3d 1357, 1362 (Fed. Cir. 2012) (finding that arguments not raised before the Board are waived); *Watts*, 354 F.3d 1362 at 1367 (same).  Therefore, the panel was only authorized to review the rejections and arguments the parties presented to the Board.

The only argument QIPC presented to the Board concerning claim 1 was that Maruyama and Ross rendered claim 1 obvious.  And the Board agreed with Quad/Tech, concluding that it was unable to find any reason why one of ordinary skill in the art would have considered Maruyama's copier or laser printer to read on the claimed "printing press," and thus reversed the rejection of claim 1.  If the panel was dissatisfied with the Board's rationale, it could have simply reversed the Board's decision because it agreed with QIPC that claim 1 would have been obvious over Maruyama and Ross, or because it found that based on the evidence of record, "it is hard to see why one of skill in the art would not have thought" that Maruyama disclosed a "printing press" as broadly recited in the claim.  *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1363 (Fed. Cir. 2013) (finding that the prior art of record showed that it was known to stow a bulkhead near the ceiling).  But what the panel could <u>not</u> do is what it did here: entertain QIPC's new argument that claim 1 is obvious in light of the combination of Sainio and Ross.  That argument was not made on the record before the agency.

## B. The APA Bars The Panel From Reviewing Whether The Board Should Have Considered A New Ground Of Rejection

Under the APA, there is a presumption that agency action is reviewable by courts. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). That presumption, however, is not absolute. Indeed, the APA provides an exception to judicial reviewability where agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As the Supreme Court held in *Heckler v. Chaney*, 470 U.S. 821 (1985), agency action is deemed committed to the agency discretion when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id*. at 830.

"The absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry, generally supports the conclusion that the 'agency action is committed to agency discretion by law.'" *Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (*en banc*); *see also Ellison v. Connor*, 153 F.3d 247, 253 (5th Cir. 1998) (finding no review permitted where statutory standards are at a "level of generality" that does "not require the consideration of specific factors, the making of findings or the development of any additional evidentiary record"); *Kendkler v. Wirtz*, 388 F.2d 381, 383 (3rd Cir. 1968) (finding no review permitted where "the statutory standard is expressed in such general concepts that it requires and must

7

contemplate the exercise of discretion in choice among various rational alternatives").

In this case, the Board has the authority to choose whether to issue a new ground of rejection. Section 41.77(b) of 37 C.F.R. expressly states that the Board "may," not "must," issue a new ground under certain conditions. This provision is thus an exception to normal appellate practice, where the appellate body's review is confined to identifying errors of the initial decisionmaker. *Cf. NSK Corp. v. U.S. Intern. Trade Comm'n*, 542 Fed.Appx. 950 (Fed. Cir. 2013) (non-precedential) ("[C]ourts of appeals . . . are decidedly courts of error."). Section 41.77(b) recognizes that in some instances, the Board will become aware of a rejection that should have been made, and it authorizes the Board to make such rejections on a purely discretionary basis. Thus, the choice of whether to designate a new ground of rejection is an exception to the Board's normal appellate function and is specifically committed to the Board's discretion.

Moreover, there are no meaningful standards against which to evaluate the Board's discretion. As noted above, § 41.77(b) gives the Board discretion to issue a new ground of rejection "[s]hould [it] have knowledge of any grounds not raised in the appeal for rejecting any pending claim." And any new ground of rejection is subject to review on the merits. *See Leithem*, 661 F.3d at 1319. But that language provides no indication of what "knowledge of any grounds" is, it lists no factors

8

for the Board to consider in making that determination, and it specifies no particular standards for a court to analyze in cabining the agency's discretion. The Board clearly has "knowledge of any grounds" when it actually issues a new ground of rejection. Indeed, the Board is precluded from making a new ground of rejection without designating it as such. *Rambus*, 731 F.3d at 1256. However, § 41.77(b) does not mandate that the Board issue a new ground of rejection. If the Board does not enter a new ground of rejection, there will be no indication in its decision that it even considered making one, much less any reasoning explaining its failure to do so. Since § 41.77(b) does not state a meaningful standard to assess the Board's exercise of discretion, any assertion that the Board improperly failed to take action is not within the ambit of the APA. *See Chaney*, 470 U.S. at 828 (before judicial review may occur under the APA, party must "clear the hurdle of § 701(a)").

## C. The Panel Did Not Have The Authority To Order The Board To Consider The Combination Of Sainio And Ross As A New Ground Of Rejection Of Claims 1-60

Even if this Court has jurisdiction under § 701(a)(2) to hear the new ground issue, it lacks authority to compel the Board to consider the new ground under § 706(1). Section 706 provides that a "reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be," among other things,

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The panel decision ran afoul of § 706 for essentially the same reason it ran afoul of § 701 – it impermissibly interfered with the agency's exercise of its discretion.

Courts are generally precluded from compelling administrative agencies to exercise their discretion in a manner favored by the courts. Indeed, a federal court may not compel an agency to take a particular action unless the agency has failed to discharge a specific and nondiscretionary duty—*i.e.*, unless the action is legally required, *see Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). As the Supreme Court has explained, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is required to take." *Norton*, 542 U.S. at 64 (italics in original).

Here, the panel appears to have created a new, non-discretionary rule that required consideration of a new ground of rejection in this case. However, nothing in the Patent Act or the applicable regulations supports this requirement. The express language of 37 C.F.R. § 41.77(b) makes clear that designating a new ground of rejection is completely discretionary. The word "may" in the rule simply gives the Board the authority to make a new ground of rejection. As the USPTO explained in discussing 37 C.F.R. § 41.50(b), which is virtually identical

to the text of 37 C.F.R. § 41.77(b), "the exercise of authority under [the rule] is discretionary." MPEP § 1213.02. Indeed, this Court, like its predecessor, has recognized that issuing a new ground of rejection is discretionary, not mandatory. *See e.g.*, *Leithem*, 661 F.3d at 1319 (stating that the Board has the right to make additional findings); *Loehr*, 500 F.2d at 1393 (declaring that the Board may enter new grounds "if it sees fit").

The panel appears to have relied on *Rambus v. Rea*, 731 F.3d 1248 (Fed. Cir. 2013) as support for its decision. Op. at 18. However, *Rambus* did not hold that if the Board has knowledge of a new ground of rejection, it <u>must</u> enter a new ground of rejection. Op. at 18 (after reciting the language of § 41.77(b), stating that "[i]n those instances, the 'Board must designate its decision a new ground of rejection'"). Rather, *Rambus* stands for the unremarkable principle that if a Board's decision relies on a ground for rejecting a claim that was not raised in the appeal, then it must designate that ground as a new ground of rejection to ensure that the appellant is afforded a fair opportunity to respond. *See Rambus*, 731 F.3d at 1256. Nowhere did this Court state in *Rambus*, or in any other decision identified by the Panel, that the Board is required to issue a new ground of rejection if it has knowledge of a rejection not discussed in the appeal.

Nor may a court specify the procedures that an administrative agency must follow when performing its statutory responsibilities. While "[a]gencies are free to

grant additional procedural rights in the exercise of their discretion, . . . reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 653-656 (1990). In reviewing the legal sufficiency of the reasons for the agency's decision, a court may not "substitute its judgment for that of the agency." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974).

The harm here is not that the panel set aside the Board's decision, but that it created a new rule that requires the Board to consider new grounds of rejection when it has knowledge of one. That rule cuts against fundamental principles of administrative law by substituting this Court's judgment for that of the agency. The panel could not substitute its views regarding the day-to-day Board procedures for those of the Board. *See Chaney*, 470 U.S. at 831-32 ("[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."); *see also Norton*, 542 U.S. at 66-67 ("The principal purpose of the APA limitations . . . is to protect agencies from undue judicial interference with their lawful discretion").

## V.    CONCLUSION

The USPTO is keenly aware that the panel believes that the Board issued an inconsistent decision.  However, the panel cannot stray from its own authority by creating new precedent requiring the Board to enter a new ground of rejection or otherwise justify not doing so in a case where no such ground was raised by the parties before it.  For the foregoing reasons, the panel should grant rehearing and affirm the Board's decision in this case.

August 25, 2014                                    Respectfully submitted,

/s/ *Sydney O. Johnson, Jr.*
NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

SYDNEY O. JOHNSON, JR.
JOSEPH G. PICCOLO
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

Attorneys for the Director of the
   United States Patent and Trademark Office

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2014, I electronically filed the attached APPELLEE DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE PETITION FOR PANEL REHEARING (with Addendum) using the Court's CM/ECF filing system.  Counsel for the Appellant and Counsel for the Cross-Appellant were electronically served via e-mail through the Court's CM/ECF system per Fed. R. App. P. 25 and Fed. Cir. R. 25.

/s/ *Sydney O. Johnson, Jr.*
SYDNEY O. JOHNSON, JR.
Associate Solicitor, USPTO
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
571-272-9035

# ADDENDUM

# INDEX TO ADDENDUM

Opinion.................................................................................................. A1-22

37 C.F.R. § 41.37(c)(iv).......................................................................A23

37 C.F.R. § 41.50(b) ............................................................................A24

37 C.F.R. § 41.77(b) ............................................................................A25

MPEP § 1213.02 ..................................................................................A26

# United States Court of Appeals
# for the Federal Circuit

---

**Q. I. PRESS CONTROLS, B.V.,**
*Appellant,*

**v.**

**MICHELLE K. LEE, Deputy Director,**
**United States Patent and Trademark Office,**
*Appellee,*

AND

**QUAD/TECH, INC.,**
*Cross-Appellant.*

---

2012-1630, -1631

---

Appeals from the United States Patent and Trade-
mark Office, Board of Patent Appeals and Interferences in
Reexamination No. 95/000,526.

---

Decided: June 9, 2014

---

DAVID D. LANGFITT, Locks Law Firm, of Philadelphia,
Pennsylvania, argued for appellant.

SYDNEY O. JOHNSON, JR., Associate Solicitor, United
States Patent and Trademark Office, of Alexandria,
Virginia, argued for appellee. With him on the brief were

NATHAN K. KELLEY, Deputy General Counsel for Intellectual Property Law and Solicitor, THOMAS W. KRAUSE, Special Counsel for IP Litigation, and JOSEPH G. PICCOLO, Associate Solicitor.

MATTHEW B. LOWRIE, Foley & Lardner LLP, of Boston, Massachusetts, argued for cross-appellant. With him on the brief was BRETT P. BELDEN, of Milwaukee, Wisconsin. Of counsel was JASON PAULS, Quad/Graphics, Inc., of Sussex, Wisconsin.

---

Before LOURIE, BRYSON, and HUGHES, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Q.I. Press Controls, B.V. ("Q.I. Press") appeals from the decision of the United States Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("the Board") reversing both the examiner's obviousness rejection of claims 1–17 and 19–60 and written description rejection of claims 14 and 24 of U.S. Patent 6,867,423 (the "'423 patent") in an *inter partes* reexamination. *See Q.I. Press Controls, B.V. v. Quad/Tech, Inc.*, No. 2012-002457 (B.P.A.I. May 11, 2012) ("*Board Decision*").[1] Quad/Tech, Inc. ("Quad/Tech") cross-appeals from the Board's decision affirming the examiner's rejection of the '423 patent's claims 61–72 as obvious and claim 18 for

---

[1]    The Leahy-Smith America Invents Act amended the *inter partes* reexamination provisions. *See* Leahy-Smith America Invents Act, Pub. L. No. 112–29, § 6, 125 Stat. 284, 299–305 (2011) ("AIA"). Those amendments do not apply here because the request for *inter partes* reexamination in this case was filed before the date of enactment, September 16, 2011. *Id.* We thus express no opinion on the applicability of the AIA provisions to the current case.

failing to meet the requirements of § 112, ¶1.[2]  Because the Board erred in failing to consider the same obviousness rejection of claims 61–72 in connection with claims 1–17 and 19–60, but did not otherwise err, we vacate in part, affirm in part, and remand.

BACKGROUND

Quad/Tech owns the '423 patent, which relates to a visual inspection system for printing presses. '423 patent col. 2 ll. 13–15. The '423 patent discloses an imaging system for web printing (*i.e.*, printing with large rolls of paper) that uses an image sensor system containing an optical sensor to inspect printed pages (the "substrate") for defects, *viz.*, misalignments or poor color, in order to change the printing process to correct those errors. *Id.* col. 5 l. 16–col. 7 l. 56. A circular configuration of light-emitting diodes ("LEDs") surrounds the image sensor and illuminates the substrate. *Id.* The circular configuration of LEDs is depicted in figure 3, reproduced below:

---

[2]    Paragraph 1 of 35 U.S.C. § 112 was replaced with newly designated § 112(a) by § 4(c) of the AIA, and AIA § 4(e) makes those changes applicable "to any patent application that is filed on or after" September 16, 2012. Because the application resulting in the patent at issue was filed before that date, we will refer to the pre-AIA version of § 112.



*Fig. 3*

*Id.* fig. 3.  Claim 1 is representative of claims 1–60 and reads as follows:

> 1. A visual inspection system configured to be in optical communication with a substrate of a printing press, said visual inspection system comprising:
>
>> a CMOS image recording device configured to record images printed on the substrate,
>>
>> a processing unit coupled to the recording device, wherein the processing unit is configured to generate an output, and
>>
>> an illumination system of the non-strobe, non-incandescent type, wherein said illumination system includes a plurality of LEDs wherein said plurality of LEDs are in a circular configuration.

*Id.* col. 9 ll. 45–56.  Claims 14 and 24, also on appeal, are similar to claim 1 but require "a sensor, wherein the LEDs are disposed between the sensor and the substrate of the printing press." *E.g.*, Response to Office Action and

Amendment, No. 95/000,526, at 8, 9 (Apr. 2, 2010) ("*Claim Amendments*"). Claim 18 is also similar to claim 1, adding the requirement that "the substrate of the printing press is unsupported at the point where the substrate is configured to be illuminated by the illumination arrangement." *Id.* at 8.

Claim 61 is representative of claims 61–72 and reads as follows:

> 61. . . . A visual inspection system configured to be in optical communication with a substrate of a printing press, wherein the substrate has a printed image, said visual inspection system comprising:
>
> > an image recording device configured to acquire a two-dimensional image from a substrate on a printing press, wherein the image recording device comprises at least a sensor, wherein the sensor is in optical communication with the substrate along an optical communication path; and
> >
> > an illumination system comprising a plurality of LEDs that are disposed in a configuration surrounding the optical communication path between the substrate and the image recording device, wherein the illumination system is adapted to illuminate the substrate of the printing press; and
> >
> > a processing circuit coupled to the image recording device and configured to process the image to control the printing press.

*Id.* at 13–14.

Q.I. Press, a developer of optical measure and control systems including a product that Quad/Tech alleged to infringe the '423 patent in a related case, initiated an

*inter partes* reexamination of the '423 patent, alleging that the claims would have been obvious over various prior art references. The references cited by both parties in the reexamination included U.S. Patent 6,605,819 of Ross, U.S. Patent 6,668,144 of Maruyama, and U.S. Patent 4,887,530 of Sainio.

Ross discloses a circular LED lighting system around an optical sensor for visual inspection of bank notes within an automated teller machine ("ATM"). Ross col. 1 ll. 5–17. Ross describes that the LEDs are lit in four separate pairs of different colored lights and the resulting diffuse reflection is recorded by the optical sensor. *Id.* fig. 1a, col. 2 ll. 13–26, col. 6 ll. 35–49. The recorded data are compared to data of genuine bills lit under those colors to determine source and denomination. *Id.* col. 2 ll. 27–34, col. 6 l. 58–col. 7 l. 22. The circular LED lighting system is depicted in Figure 1a of the Ross patent, reproduced below:



Ross fig. 1a.

Maruyama discloses an optical sensor to visually analyze and gather data from a sheet lit by an LED lighting system in a photocopier or laser printer. *E.g.*, Maruyama col. 4 ll. 30–39. Maruyama discloses that the light from the LED system is reflected at an angle to detect proper-

ties of the sheet, such as thickness. *Id.* fig. 6A, col. 6 ll. 46–59. That information is then used to adjust the printing process based on the thickness of the sheet. *Id.* col. 7 ll. 24–32.

Sainio discloses a system comprising an optical image scanner in a printing press to detect errors in the printing process. Sainio, at [57]. Sainio describes that the optical image scanner, using a high intensity light, scans printed marks to detect deviations within the marks. *Id.* col. 3 l. 67–col. 4 l. 42. The system then analyzes the deviations and generates signals to adjust the printing process and account for those deviations. *Id.* col. 6 ll. 38–44.

The examiner initially rejected all twelve of the original claims of the '423 patent as obvious over various combinations of prior art. Office Action, No. 95/000,526 (Feb. 5, 2010). Quad/Tech responded by amending claims 5, 9, and 12 and adding sixty new claims, claims 13–72, to the '423 patent. *Claim Amendments* at 4–15.

The examiner then closed prosecution and made a final rejection of all 72 claims. Action Closing Prosecution, No. 95/000,526 (June 24, 2010). She rejected claims 14 and 24 as failing to meet the written description requirement of 35 U.S.C. § 112, ¶1, on the ground that the claim requirement of "a sensor, wherein the LEDs are disposed between the sensor and the substrate of the printing press" lacked support in the original patent. *Id.* at 7. The examiner also rejected claim 18 under § 112, ¶1, on the ground that the claim contained a negative limitation requiring the "substrate of the press [to be] unsupported at the [point of illumination]," which lacked support in the original patent. *Id.* at 8.

The examiner additionally rejected claims 1–4, 7–15, 17, and 18 under 35 U.S.C. § 103(a)[3] for obviousness over Maruyama in view of Ross. *Id.* at 9. Specifically, she found that Maruyama disclosed a visual inspection system for a printing press and Ross disclosed a circular LED configuration. *Id.* at 9–14. The remaining claims were rejected under § 103(a) as unpatentable over various combinations of prior art: (i) claims 5, 6, and 12 were rejected over Maruyama in view of Ross, further in view of U.S. Patent 6,691,620 of Riepenhoff; (ii) claim 16 was rejected over Maruyama in view of Ross, further in view of Admitted Prior Art; (iii) claims 19, 20, 23–25, 27, 29, 30, 33–36, and 39–47 were rejected over Maruyama in view of Ross, further in view of Sainio; (iv) claims 21, 31, and 54 were rejected over Maruyama in view of Ross, further in view of Sainio, Admitted Prior Art, and U.S. Patent 4,736,446 of Reynolds; (v) claims 22, 26, 37, 38, and 48–53 were rejected over Maruyama in view of Ross, further in view of Sainio and Admitted Prior Art; (vi) claim 28 was rejected over Maruyama in view of Ross, further in view of Sainio and U.S. Patent 5,884,073 of Dent; (vii) claim 32 was rejected over Maruyama in view of Ross, further in view of Sainio and U.S. Patent

---

[3]     On the date applicable to this case, the statute provided that:

> (a) A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill . . . .

35 U.S.C. § 103(a) (2006). That provision has since been amended. *See* AIA § 3(c), 125 Stat. 284, 287–88 (2011). However, because the application that led to the '423 patent was filed before March 16, 2013, the pre-AIA § 103(a) applies. *See* AIA, 125 Stat. at 293.

5,967,050 of Seymour; and (viii) claims 55–60 were reject-
ed over Maruyama in view of Ross, further in view of
Sainio, Admitted Prior Art, Dent, and Reynolds. *Id.* at
24–51. Thus, for the obviousness rejections of claims 1–
60, the examiner relied on Maruyama as the primary
reference disclosing the limitations of a visual inspection
system configured to work with a printing press, as re-
quired by the preambles of the respective claims. *See,
e.g., id.* at 9 ("Maruyama discloses a visual inspection
system . . . configured to be in optical communication with
a substrate/sheet (of paper) of a printing press.").

The examiner also rejected claims 61–64, 71, and 72
under § 103(a) as unpatentable over Sainio in view of
Ross. *Id.* at 51. The examiner relied on Sainio for its
disclosure of the visual inspection system configured to
work with a printing press and on Ross for its disclosure
of the circular LED configuration. *Id.* at 51–56. Addi-
tionally, the examiner rejected claim 65 as unpatentable
over Sainio in view of Ross, further in view of Dent, and
rejected claims 66–70 over Sainio in view of Ross, further
in view of Dent and Admitted Prior Art. *Id.* at 56–57.
Thus, for the obviousness rejections of claims 61–72, the
examiner relied on Sainio as the primary reference dis-
closing the visual inspection system in optical communi-
cation with the substrate of a printing press, required by
the claim preambles, as well as the limitation to acquire a
two-dimensional image from a printing press substrate,
and relied on Ross for the circular LED configuration. *Id.*
at 51–57. Quad/Tech appealed the rejections to the
Board.

On appeal, the Board affirmed in part and reversed in
part the examiner's rejections. Specifically, the Board
reversed the rejections of claims 14 and 24 under § 112,
¶1, finding that the disclosure of an image recording
device in the written description of the '423 patent and its
representations in figure 2 and 3 were sufficient to sup-
port the claim limitation of a sensor positioned between a

substrate and an image recording device. *Board Decision* at 5. The Board further reversed the obviousness rejection of claims 1–17 and 19–60, finding that neither Ross nor Maruyama suggested using a visual inspection system with LED lighting in communication with a printing press. *Id.* at 7–8. The Board reversed those rejections because it found that neither Maruyama nor Ross disclosed or suggested a printing press, finding instead that Maruyama disclosed a visual inspection system for a copier or laser printer and that Ross disclosed a system for "media recognition, validation and screening." *Id.* at 7.

The Board did affirm the examiner's rejection of claims 61–72, finding that they would have been obvious over the printing press of Sainio and the circular configuration of LEDs of Ross. *Id.* at 14. The Board found that Sainio disclosed a printing press that included an illumination system and that it would have been obvious to incorporate the illumination system of Ross with Sainio. *Id.* at 8–11. The Board also affirmed the rejection of claim 18 under 35 U.S.C. § 112, ¶2, finding that the figures of the '423 patent do not disclose a substrate that is "unsupported at the point [of illumination]," rendering the claim invalid for lack of adequate written description. *Id.* at 6.

Q.I. Press appealed to this court the Board's reversal of the examiner's obviousness rejection of claims 1–17 and 19–60 and the written description rejection of claims 14 and 24; Quad/Tech cross-appealed the Board's affirmance of the examiner's rejection of claims 61–72 for obviousness and the written description rejection of claim 18. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I. Standard of Review

We review the Board's legal conclusions *de novo*, *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004), and the Board's factual findings underlying those determinations for substantial evidence, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). In PTO reexaminations, "'the standard of proof—a preponderance of the evidence—is substantially lower than in a civil case' and there is no presumption of validity in reexamination proceedings." *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1364 (Fed. Cir. 2012) (quoting *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008)).

### II. Obviousness of Claims 61–72

We first address the cross-appeal, as it forms the backdrop for our view of the principal appeal. Quad/Tech argues that the Board erred in rejecting claims 61–72 for obviousness over Ross and Sainio by using hindsight bias to combine the two references. Quad/Tech further argues that Ross and Sainio cannot be combined because the circular lighting configuration of Ross does not teach a high intensity illumination system, but rather a way of shining individual pairs of lights. Finally, Quad/Tech argues that Q.I. Press's statements praising the circular lighting arrangement of its own accused products provide objective evidence of nonobviousness of the '423 patent.

Q.I. Press responds that at the time of the invention of the '423 patent, LEDs were well known by those of skill in the art to provide efficient illumination with less heat than conventional lighting solutions. The Director responds that the combination of Sainio and Ross would have been obvious to one of skill in the art. The Director

contends that Sainio teaches a printing press, that Ross
teaches a circular LED configuration, and that one of skill
in the art would have combined Ross with Sainio to use
multiple LEDs in the circular pattern for greater illumi-
nation.

We agree with Q.I. Press and the Director that com-
bining Ross and Sainio would have been obvious to one
having skill in the art at the time of the invention. Obvi-
ousness is a question of law, based on underlying factual
findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18
(1966); *Elsner*, 381 F.3d at 1127. A claim is invalid for
obviousness if, to one of ordinary skill in the pertinent art,
"the differences between the subject matter sought to be
patented and the prior art are such that the subject
matter as a whole would have been obvious at the time
the invention was made . . . ." 35 U.S.C. § 103(a) (2006);
*see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–
07 (2007). "The combination of familiar elements accord-
ing to known methods is likely to be obvious when it does
no more than yield predictable results." *KSR*, 550 U.S. at
416. In assessing this question, assessment of proffered
evidence of non-obviousness must be part of the inquiry,
even in the reexamination context. *Leo Pharm. Prods.,
Ltd. v. Rea*, 726 F.3d 1346, 1357–58 (Fed. Cir. 2013).
That is the case here.

Sainio teaches a printing press incorporating a single
high intensity illumination system. That illumination
system is used to detect misalignments in the printing
press and to adjust the system accordingly. Ross discloses
a circular LED lighting configuration consisting of a
plurality of LEDs surrounding an optical sensor. As the
Board correctly found, it would have been obvious for one
of skill in the art, in seeking alternatives to a single high
intensity light, to increase the number of light sources
and utilize LEDs, teachings found in Ross. Additionally,
incorporating multiple light sources in a configuration
that would permit a high level of multidirectional lighting

would obtain the predictable result of a greater degree of illumination. The Board thus did not err in concluding that claims 61–72 would have been obvious over Sainio in view of Ross.

Moreover, although the invention in Ross uses the circular configuration to illuminate two lights at a time, claims 61–72 of the '423 patent only require a "plurality of LEDs . . . disposed in a configuration surrounding the optical communication path . . . ." *Claim Amendments* at 13–15. Thus, the claims do not require that the illumination occur at the same time or that a specific sequence of lights be lit, but only that there is a plurality of lights in a circular configuration, which Ross discloses.

Further, Q.I. Press's marketing statements praising the circular configuration of the LED illumination, introduced by Quad/Tech as evidence of industry praise, do not change our obviousness conclusion. Q.I. Press's brochure does include statements about the circular LED configuration being "state-of-the-art LED lighting technology" with a "higher quality of lumen," and that the "ring of LED lighting" was one of the "most striking design features" of that product. Joint Appendix ("J.A.") 863. Although these objective indicia of non-obviousness are relevant to, and must be factored into our analysis, that evidence does not alter the conclusion that, upon consideration of all relevant evidence, claims 61–72 of the '423 patent were invalid as obvious over Sainio in view of Ross. The Board thus did not err in reaching that conclusion.

## III. Written Description of Claim 18

Also in the cross-appeal, Quad/Tech argues that the Board erred in concluding that claim 18 of the '423 patent was invalid for inadequate written description because, it asserts, the figures of the patent depict areas where the substrate is physically unsupported by rollers. Specifically, Quad/Tech points to figures 1 and 2 of the '423 patent

to depict where the substrate is physically unsupported at the point of illumination, as required by claim 18.

The Director responds that those figures do not depict a substrate that is physically unsupported at the point of illumination. The Director contends that figure 1, depicting the printing press, does not show where the visual inspection system is, and that figure 2 is exemplary, showing the visual inspection system but not the surrounding printing press.

We agree with the Director that the figures of the '423 patent do not show the substrate unsupported at the point of illumination as required by claim 18. Whether a claimed invention is supported by an adequate written description is a question of fact, *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc), which we review for substantial evidence, *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1304–05 (Fed. Cir. 2003). The written description is a statutory requirement set forth in 35 U.S.C. § 112. The test for written description is that it "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad*, 598 F.3d at 1351 (citation and quotations omitted). The disclosure must "convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.*

As the Board found, the written description of the '423 patent does not show a substrate unsupported at the point of illumination. *Board Decision* at 6. Figure 1, below, shows an unsupported substrate (12), but does not indicate where in the figure the illumination system would be. Figure 2, on the other hand, shows the illumination system (66) and the substrate (12) but does not depict any of the printing press hardware.



'423 patent fig. 1.



*Id.* fig. 2.

Although the substrate in figure 2 appears to be unsupported at the point of illumination, the Board found that the depiction of the substrate was inadequate. In figure 2, the depicted substrate is "floating," without any reference or additional illustration of the roller hardware of the printing press. Without this information, the figure does not "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad*, 598 F.3d at 1351 (citation and quotations omitted).

The '423 patent also recognizes that figure 2 does not depict the surrounding printing press hardware. The written description relevant to figure 2 describes it as "a block diagram of a *visual inspection system*," '423 patent col. 2 ll. 37–38 (emphasis added), not as a depiction of the printing press invention as a whole. Substantial evidence thus supports the Board's conclusion that claim 18 is invalid due to an inadequate written description because the written description does not disclose a physically unsupported substrate at the point of illumination.

### IV. Obviousness of Claims 1–60

In the principal appeal, Q.I. Press argues that the Board erred in concluding that claims 1–60 would not have been obvious over Maruyama in view of Ross. Q.I. Press asserts that the Board's decision is inherently contradictory, finding that claims 1–60 would not have been obvious because Maruyama and Ross do not disclose a printing press, but also finding that the similar claims 61–72 would have been obvious over a combination of the printing press in Sainio and Ross. Q.I. Press also argues that the Board erred in reversing the rejection of claims 13–60 because those claims, added during the reexamination, improperly expanded the scope of the '423 patent in violation of 35 U.S.C. § 305.

Quad/Tech responds that the Board was correct in concluding that Maruyama and Ross would not have rendered claims 1–60 obvious. Quad/Tech contends that the printing press is a limitation of claims 1–60 and that although it appears in the preamble of some of the independent claims, later limitations require the preamble printing press disclosure to provide antecedent basis. Quad/Tech thus asserts that the combination of Maruyama and Ross would not have rendered the claims obvious because Maruyama does not disclose a printing press. Quad/Tech additionally argues that Q.I. Press has waived the argument that claims 13–60 expanded the scope of the

'423 patent because Q.I. Press failed to present it to the
Board. The Director also asserts that the combination of
Maruyama and Ross would not have rendered claims 1–
60 obvious because it is undisputed that neither
Maruyama nor Ross discloses a printing press.

Concerning the argument that the Board erred in re-
versing the rejection of claims 13–60 because those claims
improperly expand the scope of the '423 patent in viola-
tion of 35 U.S.C. § 305, we agree with Quad/Tech that the
argument was not presented before the Board and is thus
waived. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1362
(Fed. Cir. 2012) ("Absent exceptional circumstances . . .
we generally do not consider arguments that the appli-
cant failed to present to the Board." (citing *In re Watts*,
354 F.3d 1362, 1367–68 (Fed. Cir. 2004)).

Regarding the obviousness of claims 1–60, however,
those claims differ only slightly from claims 61–72, the
rejection of which we have above affirmed. Taking claim
1 and claim 61 as representative, both claims begin with a
nearly identical preamble and include an image recording
device, a processing unit, and an illumination system.
*Compare Claim Amendments* at 13–14 *with* '423 patent
col. 9 ll. 45–56. The only meaningful differences between
the claims are: (i) the image recording device of claim 61
acquires an image "from a substrate on a printing press,"
*Claim Amendments* at 14, whereas the image recording
device of claim 1 records "images printed on the sub-
strate," '423 patent col. 9 ll. 48–50; (ii) the illumination
system of claim 61 surrounds the optical image recording
device and is adapted to illuminate the printing press
substrate, *Claim Amendments* at 14, whereas the illumi-
nation system of claim 1 is in a circular configuration,
'423 patent col. 9 ll. 53–56; and (iii) the processing unit of
claim 61 is configured to process the recorded image,
*Claim Amendments* at 14, whereas the processing unit of
claim 1 is configured to generate an output, '423 patent
col. 9 ll. 50–52.

The examiner rejected claims 1–60 over combinations of Maruyama and Ross, finding that Maruyama disclosed a visual inspection system for a printing press and that Ross disclosed a circular LED illumination configuration. The examiner rejected claims 61–72 over combinations of Sainio and Ross for similar reasons; she relied on Sainio for its disclosure of the visual inspection system configured to work with a printing press and on Ross for the circular LED configuration. Given the minor differences in the claims themselves and similarities in the cited prior art, it seems apparent that the combination of Sainio and Ross discloses many of the elements of claims 1–60.

We are cognizant of the fact that the Board perhaps did not *sua sponte* reject claims 1–60 for obviousness over Sainio in view of Ross because that rejection would have constituted a new ground for rejection on appeal. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1255 (Fed. Cir. 2013) ("The Board may not 'rel[y] on new facts and rationales not previously raised to the applicant by the examiner.'" (quoting *In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir. 2011)); *see also Leithem*, 661 F.3d at 1319 (stating that even "reliance on the same statutory basis and the same prior art references, alone, is insufficient to avoid making a new ground of rejection when the Board relies on new facts and rationales not previously raised to the applicant by the examiner").

However, the Board has the discretion to issue a new ground of rejection if it has knowledge of one. 37 C.F.R. § 41.77(b) ("[S]hould the Board have knowledge of any grounds not raised in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, which statement shall constitute a new ground of rejection of the claim."). In those instances, the "Board must designate its decision a new ground of rejection and provide the appellant with an opportunity to respond." *Rambus*, 731 F.3d at 1256

(citing *In re Stepan Co.*, 660 F.3d 1341, 1344 (Fed. Cir. 2011); 37 C.F.R. § 41.77(b)); *see also Stepan*, 660 F.3d at 1343 ("[I]f the appellant has not had a full and fair opportunity to litigate the Board's actual basis of rejection, the administrative validity proceedings before the [PTO] should be allowed to continue." (citing *In re Kumar*, 418 F.3d 1361, 1367–68 (Fed. Cir. 2005)). If a new ground of rejection is included in the opinion, the patentee then has the option to either reopen prosecution before the examiner or request rehearing. 37 C.F.R. § 41.77(b).

Here, when all these references were before the Board, and this court, an obligation is owed to the public not to permit inconsistent results when a proper challenge to that inconsistency is made on appeal. The Board should have observed the similarities between the claims, noted those similarities between the claims and the references before the Board on appeal, analyzed whether the combination of Sainio and Ross would have rendered claims 1–60 obvious, and if so, issued a new ground of rejection. The combination of Sainio and Ross was before the Board on appeal because those references were cited by the examiner to invalidate claims 61–72. And, given the minor differences between the claims, the Board "[had] knowledge of . . . grounds not raised in the appeal for rejecting [claims 1–60]." *Id.* We do not hold that the Board should always apply references that are before it affecting some claims to every other claim on appeal, but we do find that in this instance, in which nearly identical claims were found both valid and invalid due to similar combinations of prior art resulting in a Board opinion that was seemingly inconsistent, the Board erred by not considering the combination of Sainio and Ross as a new ground for rejection of claims 1–60. Accordingly, we vacate the Board's decision to the extent that it holds that claims 1–60 would not have been obvious and remand that portion of the case for further proceedings consistent with this opinion.

V. Written Description of Claims 14 and 24

Q.I. Press argues in the principal appeal that the Board erred in reversing the written description rejection of claims 14 and 24 because the written description of the '423 patent does not disclose a "sensor" that is above the LEDs and the printing press substrate. Q.I. Press contends that the Board relied on the image recording device depicted in figure 3 for the sensor required in claims 14 and 24, but that the written description provides no guidance to show where in the image recording device that sensor is housed.

Quad/Tech and the Director respond that the position of the LEDs is shown in figure 2, which shows the illumination system (LEDs) disposed between the image recording device (sensor) and the substrate. They further contend that figure 3 shows the LEDs arranged around the lens of the camera and above the housing. Quad/Tech and the Director also respond that a person of ordinary skill would have understood the sensor to be in the housing and thus that the LEDs would be between the substrate and the sensor.

We agree with Quad/Tech and the Director that claims 14 and 24 are not invalid for inadequate written description because the figures of the '423 patent show the illumination system disposed between the image recording device and the substrate. First, regarding Q.I. Press's argument that the '423 patent does not disclose a "sensor," we agree with the Board that the image recording device would include a sensor. *See Board Decision* at 5 ("[T]he Specification discloses an . . . 'image recording device' (i.e., 'sensor') (e.g., Fig. 2, element 64)."). An image recording device necessarily includes a sensor to capture the image, and that sensor is contained within the recording device.

Additionally, the figures of the '423 patent clearly show the illumination system disposed between the

Q. I. PRESS CONTROLS v. LEE                    21

sensor and the substrate. Figure 2 of the '423 patent, reproduced below, depicts the illumination system (66) disposed between the image recording device (64) and the substrate (12), supporting the requirements of claims 14 and 24.



'423 patent fig. 2.

Figure 3 of the '423 patent, reproduced below, depicts the LED light array (67) as configured above the image recording device (64) in the direction of the image being recorded, here the substrate. Although the substrate is not shown in that figure, the lens of the image recording device necessarily points towards the substrate, and clearly shows that the LEDs are between the object being recorded (the substrate) and the image recording device (64).



'423 patent fig. 3.  The Board's conclusion that claims 14 and 24 are not invalid for inadequate written description is thus supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, the decision of the Board holding claims 61–72 invalid under § 103, claim 18 invalid for failing to meet the written description requirement under § 112, and claims 14 and 24 to have met the written description requirement under § 112 is affirmed, and the decision of the Board upholding the validity of claims 1–60 under § 103 is vacated and remanded.

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED

## §41.37 Appeal brief.

.

(c) *Content of appeal brief.* (1) Except as otherwise provided in this paragraph, the brief shall contain the following items under appropriate headings and in the order indicated in paragraphs (c)(1)(i) through (v) of this section, except that a brief filed by an appellant who is not represented by a registered practitioner need only substantially comply with paragraphs (c)(1)(i), (c)(1)(ii), (c)(1)(iv), and (c)(1)(v) of this section:

(iv) *Argument.* The arguments of appellant with respect to each ground of rejection, and the basis therefor, with citations of the statutes, regulations, authorities, and parts of the Record relied on. The arguments shall explain why the examiner erred as to each ground of rejection contested by appellant. Except as provided for in §§41.41, 41.47 and 41.52, any arguments or authorities not included in the appeal brief will be refused consideration by the Board for purposes of the present appeal. Each ground of rejection contested by appellant must be argued under a separate heading, and each heading shall reasonably identify the ground of rejection being contested (*e.g.,* by claim number, statutory basis, and applied reference, if any). For each ground of rejection applying to two or more claims, the claims may be argued separately (claims are considered by appellant as separately patentable), as a group (all claims subject to the ground of rejection stand or fall together), or as a subgroup (a subset of the claims subject to the ground of rejection stand or fall together). When multiple claims subject to the same ground of rejection are argued as a group or subgroup by appellant, the Board may select a single claim from the group or subgroup and may decide the appeal as to the ground of rejection with respect to the group or subgroup on the basis of the selected claim alone. Notwithstanding any other provision of this paragraph, the failure of appellant to separately argue claims which appellant has grouped together shall constitute a waiver of any argument that the Board must consider the patentability of any grouped claim separately. Under each heading identifying the ground of rejection being contested, any claim(s) argued separately or as a subgroup shall be argued under a separate subheading that identifies the claim(s) by number. A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim.

**§41.50 Decisions and other actions by the Board.**

.

(b) *New ground of rejection.* Should the Board have knowledge of any grounds not involved in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, and designate such a statement as a new ground of rejection of the claim. A new ground of rejection pursuant to this paragraph shall not be considered final for judicial review. When the Board enters such a non-final decision, the appellant, within two months from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claims:

(1) *Reopen prosecution.* Submit an appropriate amendment of the claims so rejected or new Evidence relating to the claims so rejected, or both, and have the matter reconsidered by the examiner, in which event the prosecution will be remanded to the examiner. The new ground of rejection is binding upon the examiner unless an amendment or new Evidence not previously of Record is made which, in the opinion of the examiner, overcomes the new ground of rejection designated in the decision. Should the examiner reject the claims, appellant may again appeal to the Board pursuant to this subpart.

(2) *Request rehearing.* Request that the proceeding be reheard under §41.52 by the Board upon the same Record. The request for rehearing must address any new ground of rejection and state with particularity the points believed to have been misapprehended or overlooked in entering the new ground of rejection and also state all other grounds upon which rehearing is sought.

**§41.77 Decisions and other actions by the Board.**

(b) Should the Board reverse the examiner's determination not to make a rejection proposed by a requester, the Board shall set forth in the opinion in support of its decision a new ground of rejection; or should the Board have knowledge of any grounds not raised in the appeal for rejecting any pending claim, it may include in its opinion a statement to that effect with its reasons for so holding, which statement shall constitute a new ground of rejection of the claim. Any decision which includes a new ground of rejection pursuant to this paragraph shall not be considered final for judicial review. When the Board makes a new ground of rejection, the owner, within one month from the date of the decision, must exercise one of the following two options with respect to the new ground of rejection to avoid termination of the appeal proceeding as to the rejected claim:

(1) *Reopen prosecution.* The owner may file a response requesting reopening of prosecution before the examiner. Such a response must be either an amendment of the claims so rejected or new evidence relating to the claims so rejected, or both.

(2) *Request rehearing.* The owner may request that the proceeding be reheard under §41.79 by the Board upon the same record. The request for rehearing must address any new ground of rejection and state with particularity the points believed to have been misapprehended or overlooked in entering the new ground of rejection and also state all other grounds upon which rehearing is sought.

## 1213.02 New Grounds of Rejection by Board

*****
 **>
 (f) Extensions of time under § **1.136**(a) of this title for patent applications are not applicable to the time periods set forth in this section. See § **1.136**(b) of this title for extensions of time to reply for patent applications and § **1.550**(c) of this title for extensions of time to reply for ex parte reexamination proceedings.<


Under **37 CFR *>41.50(b)**<, the Board may, in its decision, make a new rejection of one or more of any of the claims pending in the case, including claims which have been allowed by the examiner.

While ** the Board >is authorized< to reject allowed claims, this authorization is not intended as an instruction to the Board to examine every allowed claim in every appealed application. It is, rather, intended to give the Board express authority to act when it becomes apparent, during the consideration of rejected claims, that one or more allowed claims may be subject to rejection on either the same or on different grounds from those applied against the rejected claims. Since the exercise of authority under **37 CFR *>41.50(b)<** is discretionary, no inference should be drawn from a failure to exercise that discretion.